FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 16, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

YADIRA G.,[1]

               Plaintiff,

    v.

ANDREW M. SAUL, the Commissioner of Social Security,

               Defendant.

No.   4:20-CV-5093-EFS

**ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Yadira G. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) improperly determining Plaintiff's severe impairments, 2) failing to consider all applicable listings, 3) ignoring a medical opinion, 4) discounting Plaintiff's symptom reports, 5) improperly assessing

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 13-15.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

Plaintiff's residual functional capacity and therefore relying on an incomplete hypothetical at step five, and 6) relying on incorrect job evidence at step-five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF Nos. 13 & 14, and grants the Commissioner's Motion for Summary Judgment, ECF No. 15.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do basic work activities.[6] If the claimant does not, benefits are denied.[7]

---

[3] 20 C.F.R. § 416.920(a).

[4] *Id.* § 416.920(a)(4)(i).

[5] *Id.* § 416.920(b).

[6] 20 C.F.R. § 416.920(a)(4)(ii).

[7] *Id.* § 416.920(c).

Step three compares the claimant's impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[8] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[9]

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[10] If the claimant is able to perform prior work, benefits are denied.[11]

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[12] If so, benefits are denied. If not, benefits are granted.[13]

---

[8] *Id.* § 416.920(a)(4)(iii).

[9] *Id.* § 416.920(d).

[10] *Id.* § 416.920(a)(4)(iv).

[11] *Id.*

[12] *Id.* § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[13] 20 C.F.R. § 416.920(g).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

The claimant has the initial burden of proof under steps one through four.[14] At step five, the burden shifts to the Commissioner.[15]

## II.    Factual and Procedural Summary

Plaintiff filed a Title XVI application, alleging an amended disability onset date of June 26, 2015.[16] Her claim was denied initially and upon reconsideration.[17] A video administrative hearing was held before Administrative Law Judge Stewart Stallings.[18]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since June 26, 2015, the alleged onset date;

- Step two: Plaintiff had the following medically determinable severe impairments: pulmonary embolism, asthma, overactive bladder with pelvic pain, lumbar degenerative disk disease, cervical degenerative disk disease, interstitial cystitis, depression, and anxiety;

---

[14] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[15] *Id.*

[16] AR 209-14.

[17] AR 125-33 & 139-49. Plaintiff's prior disability claim was also denied. AR 71-89.

[18] AR 32-70.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform sedentary work except:

  > she needs to be able to shift positions from sitting, standing, or walking every 30 minutes for up to 5 minutes, while remaining at her work station. She can occasionally climb stairs and ramps, stoop, kneel, crouch, or crawl, and never climb ropes, ladders, or scaffolds. She can frequently handle and finger bilaterally. She should avoid all exposure to extreme cold or heat, wetness, fumes, odors, dusts, gases, poor ventilation in industrial settings, and hazards, like use of dangerous or moving machinery and exposure to unprotected heights. She can have brief, superficial interaction with the public, and occasional interaction with coworkers and supervisors.

- Step four: Plaintiff had no past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as addresser, document preparer, and final assembler.[19]

When assessing the medical-opinion evidence, the ALJ gave little weight to the nonexamining opinions of John Gilbert, Ph.D., Lisa Hacker, M.D., and Guillermo Rubio, M.D, because the ALJ found Plaintiff was more limited than

---

[19] AR 12-31.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

those physicians opined.[20] The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[21]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[22] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[23] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[24] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[25] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court

---

[20] AR 23.

[21] AR 21-23.

[22] AR 1-6.

[23] 42 U.S.C. § 405(g).

[24] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[25] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[26] The Court considers the entire record as a whole.[27]

Further, the Court may not reverse an ALJ decision due to a harmless error.[28] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[29] The party appealing the ALJ's decision generally bears the burden of establishing harm.[30]

## IV.    Analysis

**A.    Step Two: Plaintiff fails to establish consequential error.**

Plaintiff contends the ALJ erred at step two by failing to identify her seronegative rheumatoid arthritis (RA), cardiac impairments, and cervicogenic headaches as severe impairments.

---

[26] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[27] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[28] *Molina*, 674 F.3d at 1111.

[29] *Id.* at 1115 (quotation and citation omitted).

[30] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

At step two, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.[31] A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."[32] Step two is "a de minimus screening device [used] to dispose of groundless claims."[33] And "[g]reat care should be exercised in applying the not severe impairment concept."[34]

Here, the ALJ found Plaintiff had several severe impairments: pulmonary embolism, asthma, overactive bladder with pelvic pain, lumbar degenerative disk disease, cervical degenerative disk disease, interstitial cystitis, depression, and anxiety.[35] Yet, the ALJ also found that there was no clear diagnosis of seronegative RA and thus, the ALJ found that seronegative RA was not a medically determinable impairment.

---

[31] 20 C.F.R. § 416.920(c).

[32] SSR 85-28 at *3.

[33] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[34] SSR 85-28.

[35] AR 19.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

     1.     Seronegative RA

The ALJ found, "[s]eronegative rheumatoid arthritis was alleged by the claimant, but there was no clear diagnosis and all her tests were negative. [AR 1251-53]. In January and November 2018, her ANA was negative. [AR 1804]. Thus, this was not shown to be a medically determinable impairment."[36] Plaintiff argues that Dr. Kwanghoon Han formally diagnosed seronegative RA accompanied by Raynaud's phenomenon in November 2018 and thus the ALJ erred in failing to assess seronegative RA as a medically determinable impairment, especially because the RFC only limited Plaintiff to frequent handling and fingering, rather than occasional handling and fingering. The Commissioner argues that it was unclear whether Dr. Han diagnosed seronegative RA and regardless any step-two error was harmless.

The ALJ's finding was erroneous. In February 2018, Dr. Han stated he was considering whether Plaintiff's observed tenderness in her right knee, both ankles, and right metacarpophalangeal joint 1 (MCP 1) was "related to inflammatory arthritis such as seronegative rheumatoid arthritis or Sjogren's syndrome," and so ordered more lab tests and x-rays.[37] Dr. Han "assessed," or diagnosed, Plaintiff

---

[36] *Id.*

[37] AR 1275-80.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

with polyarticular arthritis.[38] Then in November 2018, Plaintiff returned to Dr. Han.[39] Dr. Han observed tenderness in the left knee, the right MCP 1-5 and proximal interphalangeal (PIP) 2 and 3, and left MCP 2 and 3 and PIP 2 and 3, and swelling in the left MCP 2 and 3.[40] Dr. Han diagnosed Plaintiff with seronegative rheumatoid arthritis, i.e., "rheumatoid arthritis of multiple sites with negative rheumatoid factor."[41] Accordingly, the ALJ erred at step two.

But the ALJ's error was harmless.[42] A mere diagnosis does not equate to a particular functional limitation.[43] Even though there was no medical opinion

---

[38] The Commissioner also argues that Dr. Han was referring to only a suspected history of seronegative RA. This argument is unsupported as Dr. Han used "H/O" (history of) when referring to conditions that he was not diagnosing but for which Plaintiff had a history of, such as pulmonary embolism. AR 1279.

[39] AR 1250-55.

[40] AR 1253.

[41] AR 1250 & 1255.

[42] *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (finding the RFC captured the medically supported restrictions)]; *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

[43] *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164-65 (9th Cir. 2008) (finding no step-two error because the medical record did not establish work-related limitations); *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

limiting Plaintiff's handling and fingering, the RFC restricted Plaintiff to frequent bilateral handling and fingering. Plaintiff argues the RFC should have instead limited her to occasional bilateral handling and fingering because she testified that she drops items and has difficulty gripping items and using a computer or phone. However, the ALJ discounted her symptom reports because, inter alia, a treatment provider in January 2018 found that Plaintiff could engage in light or sedentary work, Plaintiff improperly sought emergency cause for nonemergent conditions, and because her reported symptoms were inconsistent with the objective medical evidence.[44] The ALJ noted that examination results indicated that Plaintiff had full strength, movement, and grossly intact sensation in her upper extremities.[45] Accordingly, any error in failing to identify seronegative RA as a severe

---

[44] AR 23 (citing AR 343 (noting that Plaintiff stated she ran a nonprofit, no complaint about difficulty with her hands, and no observed swelling or tenderness in hands), AR 717 (reporting that Plaintiff sews and crochets items for sale, including headbands, barrettes, and scarves, and sets up and takes down event display booths), AR 1313 (noting that Plaintiff works for a nonprofit), and AR 1326 (discussing that Plaintiff planned a community event)) & AR 22 (citing AR 1378 ("Restricted in physically strenuous activity but ambulatory and able to carry out work of a light or sedentary nature, e.g., light house work, office work.")).

[45] AR 21 (citing, e.g., AR 1674, 1980, 582, & 588).

impairment is harmless as a frequent-manipulation limitation was included in the RFC.

2.    <u>Cardiac Impairments</u>

Plaintiff argues the ALJ erred by failing to find that Plaintiff had any cardiac impairment beyond pulmonary embolism, as the record indicated low blood pressure, persistent bradycardia arrhythmia, a thickened right ventricle, pericardial effusion, lightheadedness, and dizziness. Plaintiff accurately highlights the ALJ did not mention cardiac impairments (other than pulmonary embolism) in his step-two analysis. However, the ALJ discussed medical evidence related to Plaintiff's heart in his RFC analysis, finding that the imaging and testing reflected normal functioning.[46]

Based on a review of the discussed medical evidence and the record as a whole, Plaintiff fails to establish the ALJ erred by not identifying another cardiac impairment—beyond pulmonary embolism—as a severe impairment. In March 2017, Dr. Korimerla noted:

> 36 yr old female with multiple falls- by history they do[] not appear to be real syncopal events. However extensive work up so far does not reveal any cardiac pathology. She may be having a component of POTS [(postural tachycardia syndrome)] and some of her symptoms could be related to anxiety/depression.[47]

---

[46] AR 22.

[47] AR 1569.

Dr. Korimerla continued to treat Plaintiff. In March and July 2018, even though Dr. Korimerla heard a positive systolic murmur, he still was unsure whether the pathology was cardiac and awaited the results from the cardiopulmonary tests performed by Dr. Cayetano.[48] Dr. Cayetano's March 2018 examination revealed that Plaintiff's oxygen saturation was 99% on ambient air and that she had kyphoscoliosis.[49] After reviewing testing results, including a ventilation-perfusion (VQ) scan, a chest CT, and an Echo, Dr. Cayetano diagnosed Plaintiff with recurrent pulmonary embolism, dyspnea, mild persistent asthma, chronic nonseasonal allergic rhinitis, and inflammatory rhinitis—these diagnoses were made notwithstanding that Dr. Cayetano was aware that the Echo revealed a moderately enlarged right ventricle and Plaintiff reported dizziness, lightheadedness, and shortness of breath.[50] Dr. Cayetano recommended a dynamic test to determine if there was any pulmonary vascular issues and additional cardio pulmonary testing at the University of Washington (UW).[51] There are no UW medical records related to this recommended cardiopulmonary testing in this record.[52] Moreover, Plaintiff's cardiac monitoring device, which was implanted for

---

[48] AR 1967-72, 2006-10, & 2067-72.

[49] AR 1964-65.

[50] AR 1271, 1899-1900, 1955-56, & 1958.

[51] AR 1271.

[52] AR 35.

almost a year, did not detect any significant arrhythmias.[53] Plaintiff argues that the cardiac monitoring device reflected that she engaged in less than 6 "patient activity hours" per day, is consistent with her testimony that she is unable to engage in full-time work.[54] However, Plaintiff did not provide any evidence to support her argument in this regard, such as what level of activity constitutes a "patient activity hour," i.e., did this require activity above a certain heart rate and/or a heart rate above a sedentary heart rate? Accordingly, Plaintiff fails to establish that the ALJ's sedentary work RFC is inconsistent with the recorded "patient activity hours." In addition, considering Dr. Korimerla's and Dr. Cayetanos's findings, Plaintiff fails to establish that the sinus bradycardia and rare isolated premature atrial contractions (PACs) were the result of severe cardiac impairments. On this record, the ALJ's decision to not find a cardiac impairment (beyond pulmonary embolism) as a severe impairment is rational and supported by substantial evidence. Resultantly, the ALJ did not error by not considering whether Plaintiff met Listing 4.05, which requires recurrent arrhythmias documented by electrocardiography occurring coincident with syncope or near-syncope.

---

[53] AR 1740-48.

[54] AR 1742 & 1747.

### 3.    Cervicogenic Headaches

Plaintiff argues the ALJ failed to find Plaintiff's cervicogenic headaches as a severe impairment and resultantly failed to find that Plaintiff's headaches were work preclusive, either when considered under Listing 11.02B or as part of the RFC. The ALJ found that Plaintiff's lumbar and cervical degenerative disc diseases were severe impairments and noted that Plaintiff alleged to have migraines 4-5 times per month.[55] But the ALJ did not find that Plaintiff had a severe impairment related to headaches, or namely cervicogenic headaches. Plaintiff did not cite any record wherein Plaintiff was diagnosed with a cervicogenic headache. Further, as is explained below, the ALJ's decision to discount Plaintiff's symptom reports was supported by substantial evidence. To the extent Plaintiff argues the ALJ erred by failing to consider cervicogenic headaches as a severe impairment, Plaintiff fails to establish error in this regard.

### 4.    Harmless Error

Any step two error was harmless. The ALJ resolved step two in Plaintiff's favor by finding several severe impairments, including lumbar and cervical degenerative disk disease, and crafted an RFC that limited Plaintiff to sedentary work that allowed Plaintiff to rotate positions along with frequent bilateral

---

[55] AR 19-21.

handling and fingering, environmental restrictions, brief, superficial interaction with the public, and occasional interaction with coworkers and supervisors.[56]

**B.    Step Three: Plaintiff fails to establish error.**

Plaintiff argues the ALJ erred by not considering her cervicogenic headaches when assessing whether Plaintiff satisfied Listing 11.02.[57]

While Listing 11.02 addresses seizures, it is the most closely analogous listing for migraines.[58] Listing 11.02 requires that a migraine headache be "documented by detailed description of a typical [migraine headache], including all associated phenomena."[59] To be of equal severity and duration, Listing 11.02B requires the migraines occur at least once a week for at least three consecutive months, despite compliance with treatment. Listing 11.02D requires the migraines occur at least once every two weeks for at least three consecutive months, despite

---

[56] AR 19-20; *see Stout*, 454 F.3d at 1055.

[57] Plaintiff also argues that the ALJ erred by not considering whether Plaintiff met Listing 4.05, which requires recurrent arrhythmias documented by electrocardiography occurring coincident with syncope or near-syncope. As discussed above, there was no error in this regard as Plaintiff failed to establish that the medical record supports a Listing 4.05 finding.

[58] HALLEX DI 24505.015(B)(7)(B) (example 2).

[59] 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02.

adherence to prescribed treatment, and the claimant must have a marked limitation in physical functioning or one of the four areas of mental functioning.

Here, the ALJ did not discuss Listing 11.02 nor Plaintiff's headaches in the step-three analysis. Yet, an ALJ is not required to discuss every listing and explain "why a claimant fails to satisfy every different section of the listing," so long as the ALJ's "'evaluation of the evidence' is an adequate statement of the 'foundations on which the ultimate factual conclusions are based.'"[60] Here, Plaintiff reported recurring, disabling headaches. The ALJ though found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record. As is discussed below, the ALJ's discounting of Plaintiff's symptom reports is supported by substantial evidence. While the ALJ did not give reasons for discounting the intensity, persistence, and limiting effects of Plaintiff's headaches specifically, the ALJ discussed Plaintiff's physical conditions, which reportedly contributed to Plaintiff's headaches, and found that the objective medical evidence did not fully support Plaintiff's symptom reports related to her lumbar and cervical degenerative disk disease. And as the ALJ noted, the treatment notes indicated that Plaintiff was neurologically intact. The medical evidence also indicates that

---

[60] *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

Plaintiff's headaches were not as frequent, severe, or long-lasting as she reported.[61] Moreover, the ALJ discounted Plaintiff's credibility because she continued to present to the emergency room for non-urgent conditions and her symptoms were inconsistent with a treating provider's assessment that she was able to carry out work of a light or sedentary nature. The ALJ also found that Plaintiff was only mildly or moderately limited in her four areas of mental functioning. On this

---

[61] AR 1997 (noting that Plaintiff reported that she had not had a migraine for six months). Although the ALJ did not expressly discuss that the reported cause of Plaintiff's headaches varied, the ALJ did discount Plaintiff's credibility in general. *See Smolen*, 80 F.3d at 1284 (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."). As to her headaches, in January 2016, she reported that she had a "migraine attack as she had not eaten the entire day," and in March 2016, following a fall, she was treated for chronic neck pain and a reported daily headache related to that neck pain. AR 412 & 570-72. Although it was noted that Plaintiff appeared uncomfortable when being treated for neck pain in March 2016, a notation that Plaintiff appeared uncomfortable or in pain due to a migraine was rare in this record—a record that spans five years and averages more than three medical visits per month.

record, the ALJ's decision not to discuss whether Listing 11.02 was satisfied is a rational decision supported by substantial evidence.

**C.    Medical Opinion: Plaintiff fails to establish error.**

Plaintiff challenges the ALJ's failure to discuss the letter written by her treating provider Maria Ello, M.D., which stated:[62]

> To whom it may concern,
>
> Yadira G:       is needing 24 hour care due to medical diagnosis. For any questions or concerns please feel free to contact our office.

The Court finds no error in the ALJ's decision not to discuss Dr. Ello's letter.[63] This letter is not sufficiently detailed nor supported by treatment notes to be considered a medical opinion as to Plaintiff's physical or mental restrictions.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments, including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."[64] An ALJ is not required to provide reasons for rejecting statements

---

[62] AR 1206. (Edited to omit Plaintiff's full name).

[63] *Compare Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs.").

[64] 20 C.F.R. § 416.927(a)(1).

within medical records when those records do not reflect physical or mental limitations or otherwise provide information about the ability to work.[65] Here, Dr. Ello's letter neither identified nor explained Plaintiff's symptoms, diagnosis, prognosis, or her physical or mental restrictions. Simply because one needs 24-hour care does not correlate to a work preclusion, as there are several ways to provide 24-hour care while one works. For example, a diabetes insulin pump or pacemaker, or the LINQ device that Plaintiff had installed for almost a year, may constitute 24-hour care but they generally still allow for an individual to work. Moreover, Dr. Ello's treatment records do not convert this generic broad letter into a medical

---

[65] *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 n.3 (6th Cir. 2009) (noting that the physician's questionnaire responses only addressed the general relationship between the claimant's condition and potential symptoms and did not address the specific extent of claimant's functional limitations); *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (deciding that because the physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions"); *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (An ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

opinion. The imaging reviewed by Dr. Ello indicated either normal results or mild conditions and Dr. Ello routinely observed Plaintiff in generally good health.[66] There is nothing in Dr. Ello's treatment records that reflect Plaintiff's diagnosed impairments were so severe that Plaintiff was unable to perform full-time work. There was no error by the ALJ in not discussing Dr. Ello's letter.

Moreover, even if Dr. Ello's letter is construed as a medical opinion that Plaintiff was unable to sustain full-time work, there is no harm resulting from the ALJ's failure to discuss this "opinion," which conflicts with the opinions of the non-

---

[66] *See, e.g.*, AR 1382-83 (not in distress, very slight rhonchi and wheeze so advised shortness of breath is asthma, and no edema); AR 1390-91 (not in distress, some occasional wheeze noted, no murmurs appreciated, no edema but with upper back pain); AR 1396-97 (not in distress, chest was clear to auscultations, no murmurs appreciated, right left lower quadrant abdominal pain, no edema noted, but a positive straight leg raise); AR 1410-11 (not in distress but with an intact slight bump on her forehead and related neck pain and migraines due to a recent fall, chest was clear to auscultations and no murmurs appreciated); & AR 1430-32 (not in distress, chest was clear to auscultations, no murmurs appreciated, grossly normal epigastric pain, and no edema).

examining medical sources, as it is vague, unexplained, and unsupported by Dr. Ello's largely unremarkable medical records.[67]

**D.    Plaintiff's Symptom Reports: Plaintiff fails to establish consequential error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[68] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[69] "This requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds not to be

---

[67] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (discussing that treatment notes are to be considered along with opinion).

[68] *Molina*, 674 F.3d at 1112.

[69] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

credible and . . . explain what evidence undermines that testimony" and not merely rely on "high-level reasons" unsupported by a discussion of the evidence in conflict with the claimant's reported symptoms.[70]

Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with the largely unremarkable objective medical evidence, improvement with treatment, the medical recommendation that Plaintiff stop using the emergency department for non-emergency medical care, minimal mental health treatment, and Plaintiff's activities.[71]

First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[72] However, objective medical evidence is a relevant factor in considering the severity of the reported symptoms.[73] "Objective medical evidence" means signs, laboratory findings, or both.[74] In turn, "signs" is defined as:

---

[70] *Lambert v. Saul*, No. 19-17102, 2020 WL 6735633 (9th Cir. Nov. 17, 2020) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102) (9th Cir. 2014).

[71] AR 21-23.

[72] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[73] *Id.*

[74] 20 C.F.R. § 416.902(k).

one or more anatomical, physiological, or psychological abnormalities
that can be observed, apart from [the claimant's] statements
(symptoms). Signs must be shown by medically clinical diagnostic
techniques. Psychiatric signs are medically demonstrable phenomena
that indicate specific psychological abnormalities, e.g., abnormalities
of behavior, mood, thought, memory, orientation, development, or
perception, and must also be shown by observable facts that can be
medically described and evaluated.[75]

Evidence obtained from the "application of a medically acceptable clinical

diagnostic technique, such as evidence of reduced joint motion, muscle spasm,

sensory deficits, or motor disruption" is considered objective medical evidence.[76]

Here, the ALJ's finding that the objective medical evidence was inconsistent with

Plaintiff's reports of disabling physical and mental impairments is supported by

substantial evidence. As the ALJ noted, the imaging, including cervical MRI and a

lumbar MRI, were largely unremarkable.[77] Moreover, the physical examinations

---

[75] *Id.* § 416.902(l).

[76] 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence
(2019).

[77] AR 21 (citing AR 414-15 (No spinal canal stenosis, evidence of nerve root
compromise, or cervical spinal cord signal abnormality; multilevel degenerative
disc disease, face arthropathy; normal unenhanced brain MRI; mild acute
pulmonary embolism in the left lower lobe; small left lower lobe lung nodule
measuring 4 mm; negative right leg for deep venous thrombosis; no evidence of left
upper extremity deep vein thrombosis; essentially normal [Echo cardiac] study and

were routinely unremarkable except for some tenderness, discomfort, and sporadic murmurs.[78] The ALJ also highlighted that Plaintiff's treating provider determined that Plaintiff was "ambulatory and able to carry out work of a light or sedentary nature, e.g., light house work, office work."[79] Plaintiff argues that it is unclear

———————————————

pulmonary artery systolic pressure could not be assessed due to absence of adequate TR jet); & AR 1872 ("Small posterior annular fissure demonstrated at L5-S1. There is mild diffuse disc bulge at this level, without significant spinal canal or neural foraminal stenosis"; mild diffuse disc bulge at L4-L5; and probable left adnexal cyst).

[78] AR 21-22 (citing, e.g., AR 1674 (Plaintiff may have some tenderness or swelling in her joints or back, she retained a normal gait, full strength throughout her bilateral upper and lower extremities, negative straight leg raises, negative Spurling, negative Hoffmann, and negative Durkan), AR 1980 (normal gait and musculoskeletal movement full and free from obvious pain, although bruising in right calf with tenderness), AR 582-83 (no abnormal observations for heart, lungs, abdomen, musculoskeletal, although scoliosis in back and some edema noted in extremities, AR 587-88 (no abnormal observations or findings other than congested turbinates), AR 1269 (no abnormal objective findings other than kyphoscoliosis and a moderately loud systolic murmur along the right parasternal border); & AR 1364 (no abnormal observations)).

[79] AR 1378.

whether this note reflected the provider's opinion or whether it was simply a generic rating system. This was the only medical record that was authorized by Dr. Fora or one that included a "performance status" entry. Regardless of whether this was default language for a selected performance status, this is the language contained in Dr. Fora's treatment note and this performance status is consistent with the largely unremarkable observations and findings. Accordingly, the ALJ's finding that Plaintiff's reported disabling physical symptoms were inconsistent with the objective medical evidence is supported by substantial evidence. Moreover, as is discussed below, the ALJ's finding that Plaintiff's reported mental health symptoms were inconsistent with the objective medical evidence is supported by substantial evidence.

Second, the ALJ's finding that Plaintiff's reported bladder symptoms were inconsistent with her improvement with treatment is rational and supported by substantial evidence.[80] The treatment notes reflect that Plaintiff's urinary incontinence improved after Botox injections in January and November 2016.[81] Plaintiff argues that her bladder symptoms continued, but she presented no evidence that she sought subsequent Botox injections or other treatment for her urinary-urgency symptoms.[82] Plaintiff submits that she continued to have bacteria

[80] *See Morgan*, 169 F.3d at 599-600 (considering evidence of improvement).

[81] AR 406 & 1520.

[82] *See, e.g.*, AR 1520.

and blood in her urine samples. Yet the medical evidence does not clearly indicate that the bacteria in her urine was related to her overactive bladder or interstitial cystitis. And the amount of blood present in the urine samples was "small."[83] There is no medical opinion indicating that there was a need to accommodate these impairments with non-permitted work breaks. Plaintiff also argues that it was internally inconsistent for the ALJ to find the bladder disorders as severe but then not include any limitations in the RFC for the bladder disorders. This argument fails to reflect that the vocational expert testified that the three identified jobs allowed ready access to a bathroom during permitted breaks and that a worker is generally permitted to be unproductive up to 20 percent of the workweek (thereby allowing Plaintiff to use the bathroom outside of "normal" work breaks).[84] The ALJ's finding that Plaintiff had severe bladder conditions that improved with treatment and thus allowed her to work the three identified jobs is a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's more limiting bladder symptoms.

Third, the ALJ found Plaintiff's reported severe physical symptoms inconsistent with the counseling she received from a provider as to the proper use of emergency care.[85] The cited medical record states in part:

---

[83] AR 1640, 1822, 1837, & 1844.

[84] AR 67.

[85] AR 22.

- "I received notification patient has been to the hospital 11 times this year";

- All of the hospital records we were able to find were printed and reviewed with the patient in detail during today's visit"; and

- "30 minutes of face to face counseling provided on when to go to the [emergency department] or use [urgent care], signs and symptoms of clotting and likelihood of having a clot while on Xarelto, reassurance provided all records from various [emergency department's] were reviewed and were normal other than the UTI which is currently being treated, patient expressed understanding."[86]

Given the fairly unremarkable objective findings in the record and this detailed notation about Plaintiff's unnecessary use of the emergency department on several occasions, the ALJ reasonably found Plaintiff's reported disabling physical symptoms not credible.[87] This was a clear and convincing reason to discount Plaintiff's reported physical symptoms.

_____

[86] AR 1353-54.

[87] *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (finding that the tendency to exaggerate symptoms is a permissible reason to discount a claimant's reported symptoms); *Molina*, 674 F.3d at 1111 (recognizing that the ALJ is permitted to weigh conflicting evidence and the court upholds the ALJs' findings that are supported by inferences reasonably drawn from the record).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

      Fourth, the ALJ's finding that Plaintiff's reported mental health symptoms were inconsistent with her minimal mental-health treatment and her generally "normal" mental status examinations is rational and supported by substantial evidence. Unexplained or inadequately explained reasons for failing to seek medical treatment may cast doubt on a claimant's subjective complaints.[88] Here, although it was recommended that Plaintiff engage in counseling, she did not show up for three counseling sessions but she did attend 1) a medication management appointment at which she had restricted affect and mood with fair insight and judgment and 2) a counseling session at which her affect and mood were broad and her thought process clear, logical, and organized.[89] Plaintiff argues that her lack of participation in counseling was not a valid reason to discount her reported mental health symptoms as her lack of mental health treatment was in part due to her mental health conditions. But Plaintiff presented no evidence to support this argument, i.e., there was no evidence that her anxiety or depression was so severe as to prevent her from remembering and attending medical appointments. In fact, the medical records reveal that Plaintiff was able to attend physical medical appointments on a regular basis. That Plaintiff's mental status was generally noted as normal during the five years covered by the medical records and that she received minimal mental health treatment were clear and convincing reasons

---

[88] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[89] AR 1316-24.

supported by substantial evidence to discount her more limiting mental health symptoms.[90]

Fifth, the ALJ discounted Plaintiff's complaints of disabling symptoms because they were inconsistent with Plaintiff's activities.[91] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[92] The ALJ highlighted that Plaintiff ran a non-profit organization for which she did crafts and organized events, she traveled to California and Seattle for events and vacations, and she was a stay-at-home mother of three special needs children, an activity that required "many of the same skills as full-time work, such as concentration, stamina, time management, social skills, and mental acuity."[93] As Plaintiff highlights, she had significant help with child care and related housework: caregivers helped about 143 hours a month.[94] Nonetheless, as is reflected in the investigation report cited by the ALJ, Plaintiff remained active during the time the caregivers were at her

---

[90] AR 22 (citing, e.g., AR 392, 396, 401, 430, 455, 495, 549, 582, 739, & 753).

[91] AR 22.

[92] *Molina*, 674 F.3d at 1113.

[93] AR 23.

[94] AR 720 & 1050.

house.[95] Moreover, even if the ALJ erred by finding Plaintiff's activities inconsistent with her disabling symptom reports, the ALJ articulated other supported grounds for discounting Plaintiff's reported physical and mental symptoms.[96] Accordingly, any error in this regard is harmless.

In summary, Plaintiff fails to establish the ALJ erred by discounting her symptom reports.

**E.    RFC: Plaintiff fails to establish error.**

Plaintiff argues the ALJ failed to properly assess the limitations from her overactive bladder, interstitial cystitis, headaches, cardiac impairment(s), and seronegative RA into the RFC. "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."[97]

1.    <u>Overactive Bladder and Interstitial Cystitis</u>

Plaintiff argues the ALJ failed to consider that as a result of her severe overactive bladder and chronic interstitial cystitis (IC) that she must use the restroom every 30-60 minutes for 10-15 minutes at a time. The ALJ found Plaintiff's IC to be a severe impairment but did not include an express bathroom limitation in the RFC. The vocational expert testified that each of the identified

---

[95] AR 716-30 (noting that two witnesses describe Plaintiff as always busy sewing and crocheting items to sell).

[96] *See Carmickle*, 533 F.3d at 1162-63 n.4.

[97] *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

jobs (addresser, document preparer, and final assembler) would be in close proximity to a restroom, and that an employee would typically be retained so long as she was on task 80 percent of the day.[98] As is discussed above, the ALJ discounted Plaintiff's reported bladder symptoms because her bladder symptoms improved with treatment.[99] Moreover, the ALJ generally found Plaintiff's symptom reports not credible because of her unnecessary use of emergency care, a treating provider found that Plaintiff could perform work of a sedentary or light nature, and Plaintiff's reported symptoms were not fully supported by the objective medical evidence. The ALJ's findings are rational and supported by substantial evidence. Plaintiff fails to establish the ALJ erred by not including additional bathroom breaks in the RFC.

2.    <u>Other Impairments</u>

As discussed above, the ALJ reasonably included a frequent manipulation limitation, which sufficiently accounts for Plaintiff's diagnosed seronegative RA. The ALJ also reasonably determined that Plaintiff did not have a severe cardiac impairment beyond pulmonary embolism. Plaintiff fails to establish that other RFC limitations were needed in order to sufficiently address her medically supported impairments and resulting functional limitations. On this record, there

---

[98] AR 67-68.

[99] AR 406 & 1520.

1
2

was no duty for the ALJ to further develop the record by obtaining a consultative

examination.

**F.    Step Five: Plaintiff fails to establish error.**

3
4
5
6
7
8
9
10
11

Plaintiff argues the ALJ's step-five finding is erroneous because it was

based on unreliable and invalid information from the vocational expert (VE) about

the number of available jobs. At the hearing, the VE identified three jobs consistent

with the ALJ's RFC and stated that his job-numbers estimates came from the Job

Browser Pro (JBP).[100] Plaintiff argues that the JBP's 2020 numbers for these jobs

do not match the VE's 2019 testimony and that the JBP's numbers indicate less

than a substantial number of addresser, document preparer, and final assembler

jobs in the national economy:

12
13
14

|  | **VE** | **JBP 2020** |
|---|---|---|
| Addresser, DOT 209.587-010 | 25,000 jobs | 2,699 jobs |
| Document preparer, DOT 249.587-018 | 64,000 jobs | 19,073 jobs |
| Final assembler, DOT 713.687-018 | 24,000 jobs | 27 jobs |

15
16
17

At step five, the ALJ must identify specific jobs existing in substantial

numbers in the national economy that the claimant can perform despite her

identified limitations.[101] An ALJ may solicit VE testimony as to the availability of

18
19
20
21
22
23

---

[100] AR 63-67.

[101] *Johnson v. Shalala*, 50 F.3d 1428, 1432 (9th Cir. 1995). *See* 20 C.F.R.

§ 416.920(g).

jobs in the national economy.[102] The ALJ's decision regarding the number of jobs must be supported by substantial evidence.[103] A VE's reliable testimony constitutes substantial evidence.[104]

First, the Commissioner argues that Plaintiff waived any challenge to the VE's testimony as to the number of available addresser, document preparer, and final assembler jobs because Plaintiff's counsel did not challenge the methodology used by the VE or the identified job numbers during the administrative hearing. At the hearing, Plaintiff's counsel asked the VE what the source of his job numbers were, and the VE identified the JBP.[105] Plaintiff's counsel did not pursue any additional questioning as to the VE's identified job numbers nor presented any JBP evidence or other job-source evidence. Following the administrative hearing, Plaintiff did not apparently request permission to submit supplemental briefing or interrogatories contrasting the VE's job estimates with the JBP information or present such as new evidence to the Appeals Council. As a result, Plaintiff cannot

---

[102] *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 2011); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

[103] *Farias v. Colvin*, 519 Fed. App'x 439, 440 (9th Cir. 2013) (unpublished). *See Hill*, 698 F.3d at 1158.

[104] *Bayliss*, 427 F.3d at 1218; *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002).

[105] AR 67.

pursue this jobs-number challenge. As the Ninth Circuit emphasized in *Shaibi v. Berryhill*, the ALJ (or the Appeals Council) is "better positioned to weigh conflicting evidence than a reviewing court."[106] The ALJ's better positioning is highlighted here as Plaintiff now on appeal presents the Court with 2020 JBP information. However, the VE presumably did not rely on 2020 JBP information when he testified in January 2019.

Even if Plaintiff's 2020 JBP information is considered by the Court, there are 2,699 addresser jobs and 19,073 document preparer jobs identified nationwide. The Ninth Circuit has not established a "bright-line rule for what constitutes a 'significant number' of jobs."[107] Yet, the Ninth Circuit has held that the availability of 25,000 national jobs constitutes a significant number of jobs, albeit it was a "close call."[108] In comparison, the Ninth Circuit held that the availability of 1,680 national jobs did not constitute a significant number of jobs.[109] Here, using the 2020 JBP data, the combined national total of addresser and document preparer

---

[106] 883 F.3d 1102, 1109 (9th Cir. 2017) ("When a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel.").

[107] *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

[108] *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014).

[109] *Beltran*, 700 F.3d at 390.

jobs is 21,772.[110] The Court finds this number sufficiently close to the 25,000 national jobs considered as a significant number of jobs by the Ninth Circuit in *Gutierrez v. Commissioner of Social Security*.[111] Accordingly, even if Plaintiff's waived challenge is considered, it is unavailing.

### V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 16th day of December 2020.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge

---

[110] The Court elects not to consider the 27 final assembler jobs in this assessment.

[111] 740 F.3d 519, 528 (9th Cir. 2014) (citing *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (determining 10,000 jobs to constitute work that exists in significant numbers)).